IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

INNOSPEC LTD.,

      Plaintiff,

v.                                    Civil Action No. 3:14-cv-158-JAG

ETHYL CORPORATION,

      Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the defendant's Motion to Compel Arbitration. (Dk. No. 20.) In this action, Innospec seeks a declaratory judgment stating that it has the right to terminate its requirements contract with Ethyl Corporation because of changed, previously unforeseeable economic conditions. Ethyl now asks the Court to compel the matter to arbitration and either stay proceedings or dismiss the claim outright. Although Ethyl urges the Court to determine the arbitrability of Innospec's claim, the arbitration provision in the parties' contract clearly and unmistakably commits questions of arbitrability to the arbitrator. The Court therefore GRANTS the motion and DISMISSES the claim without prejudice.

### I. Material Facts

Innospec, a fuel additive manufacturer, entered a contract in 1998 to supply Ethyl tetraethyl lead ("TEL"), a lead-based fuel additive, and amended the agreement in 2007 to tie the price of TEL to the United Kingdom retail price index. With the global appetite for leaded motor fuel substantially weakened, however, Innospec asks the Court for a declaratory judgment that it

possesses the right to terminate its contract with Ethyl. In response, Ethyl asks the Court to compel arbitration pursuant to an arbitration provision in their contract.

The arbitration provision reads as follows:

### DISPUTES

Any dispute between the parties with respect to this Agreement which the parties are unable to resolve through mutual consultations and negotiations within thirty (30) days following notification by one party to the other in writing of the existence of such a dispute, may be submitted by either party for arbitration in London in accordance with the Rules of the London Court of International Arbitration by one arbitrator to be appointed by agreement between the parties. If the parties fail to agree upon an arbitrator, the arbitrator shall be appointed by the President for the time being of the Institution of Chemical Engineers. Either party shall be entitled to make such submission at any time following the last day of such thirty (30) day period by written notice to the other party, but no submission may be made later than eighteen (18) months following the date of the written notification by one party to the other of the existence of the dispute. The parties hereby exclude any right to appeal pursuant to Section 69 of the Arbitration Act 1996. Any arbitral award shall be binding on the parties and judgment upon the award may be entered in any court having jurisdiction. The law of England shall govern this Agreement.

(Compl., Ex. 1, Att. A, at ¶ 14.)

## II. Standard of Review

Under the Federal Arbitration Act ("FAA"), a party may move for an order staying proceedings and compelling the opposing party to pursue its claims through arbitration. *See* 9 U.S.C. §§ 3-4. "The FAA reflects a fundamental principle that arbitration is a matter of contract," and, as such, "requires courts to enforce [arbitration agreements] according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010) (internal citations omitted).

Federal courts have a "healthy regard for the federal policy favoring arbitration." *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "This federal policy is based on the FAA, which establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues

should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* (citations omitted).

Courts follow a two-step approach to determine whether arbitration is required in a particular dispute. *See Peabody Holding v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 101 (4th Cir. 2012). First, the court must "determine *who* decides whether a particular dispute is arbitrable: the arbitrator or the court." *Id.* If the court answers that question in favor of itself, then the court moves to the second step to determine "*whether* the dispute is, in fact, arbitrable." *Id.* While step two adheres to the general federal presumption in favor of arbitration, step one reverses that presumption. "Courts should not assume that the parties agreed to arbitrate arbitrability." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999) (explaining that the presumption in favor of arbitration "does not apply to the issue of which claims are arbitrable").

To overcome the reverse presumption, an arbitration agreement must meet the "clear and unmistakable" standard announced in *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986): "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* "The 'clear and unmistakable' standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice." *Peabody Holding*, 665 F.3d at 102. Clauses that contain general provisions requiring arbitration for disagreements "relating to" or "arising out of" a contract do not meet the standard. *Id.* But, "the 'clear and unmistakable' test applies only 'to the parties' *manifestation of intent*, not the agreement's validity.'" *Id.* (quoting *Rent-A-Center*, 130 S.Ct. at 2778 n.1).

3

### III. Discussion

*A. Jurisdiction*

Before addressing the arbitrability question, the Court must first address Innospec's passing salvo that this Court lacks the power to do what Ethyl asks. In a short footnote near the conclusion of its brief in opposition, Innospec posits that, "[u]nder § 4 [of the FAA], a court can compel arbitration only 'within the district in which the petition for an order directing such arbitration is filed.'" (Pl.'s Mem. Opp'n at 9 n.4.) Because Ethyl seeks enforcement of arbitration in London and not in the Eastern District of Virginia, Innospec argues this Court may not grant the motion.[1]

Innospec's argument fails because the arbitration provision falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (entered into force on Dec. 29, 1970) (codified as 9 U.S.C. § 201 et seq.), also known as the New York Arbitration Convention. The New York Arbitration Convention applies to agreements that fall under § 2 of the FAA in which at least one party is foreign to the United States, *see* 9 U.S.C. § 202, and grants jurisdiction to the district courts for actions or proceedings involving such agreements, *id.* § 203. A district court "may direct that arbitration be held in accordance with the agreement at any place therein provided for, *whether that place is within or without the United*

---

[1] The language from § 4 has vexed courts deciding whether to compel arbitrations when the arbitration agreement contains a forum-selection clause choosing a place outside the court's judicial district. *See, e.g., J.P. Morgan Sec. Inc. v. La. Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 81-83 (S.D.N.Y. 2010). But that complication arises when the parties and arbitration agreement are entirely domestic to the United States.

*States."* *Id.* § 206 (emphasis added). Over 150 nations have signed on to the Convention, including the United States and the United Kingdom.[2]

The arbitration provision here is in a contract between Innospec, a British company, and Ethyl, an American corporation. Given that each party is a citizen of a signatory nation and the provision specifies that arbitration is to take place within a signatory nation, their arbitration provision falls under the New York Arbitration Convention. *See E.A.S.T., Inc. of Stamford v. M/V Alaia*, 876 F.2d 1168, 1172-73 (5th Cir. 1989) (holding that an arbitration agreement requiring arbitration in London was subject to the Convention, despite the fact that one party was a citizen of a non-signatory nation); *Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v. Lauro*, 712 F.2d 50, 52 (3d Cir. 1983) (holding that an arbitration agreement entered into by citizens of signatory nations was subject to the Convention). Accordingly, the Court has jurisdiction to enforce arbitration as contemplated by the provision.

## B. Arbitrability Analysis

The arbitrability analysis for this arbitration provision begins and ends at the first step, the determination of *"who"* decides: arbitrator or court. The arbitration provision in the contract here meets the "clear and unmistakable" standard and therefore overcomes the reverse presumption in favor of judicial determination of arbitrability. For sure, the provision contains a broad commitment of "[a]ny dispute between the parties with respect to" the contract to arbitration, which, by itself, does not pass muster. *Cf. Peabody Holding*, 665 F.3d at 102-03. But rather than merely committing all disputes to arbitration, the arbitration provision specifies that arbitration will be governed "in accordance with the Rules of the London Court of International Arbitration." The Rules of the London Court of International Arbitration ("LCIA Rules") provide that "[t]he

---

[2] *See Convention on Recognition and Enforcement of Foreign Arbitral Awards (New York, 1958)*, U.N. Comm'n on Int'l Trade Law, http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html.

Arbitral Tribunal shall have the power to rule upon its own jurisdiction and authority, including any objection to the initial or continuing existence, validity, effectiveness or scope of the Arbitration Agreement." LCIA Rules art. 23.1. The incorporation of the LCIA Rules, which give the arbitrator jurisdiction to determine arbitrability, meets the "clear and unmistakable" standard.

Although the Fourth Circuit has not ruled on the issue, a majority of circuit courts have held that the incorporation of specific rules that allow arbitrators to determine arbitrability meets the "clear and convincing" standard.[3] Many cases supporting this conclusion involve the incorporation of the Commercial Rules of the American Arbitration Association, but courts have reached the same answer when the parties incorporated international arbitration procedures with similar arbitration-jurisdiction rules.[4] Importantly, the language of the LCIA Rules mirrors the language of rules that other courts have found to meet the "clear and unmistakable" standard.[5]

---

[3] *See Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 F. App'x 630, 632 (9th Cir. 2011); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 211 (2d Cir. 2005); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989); *see also U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 1:11CV371, 2013 WL 1332028, at *4 (E.D. Va. Mar. 29, 2013) ("Rule 7 of the AAA Commercial Rules 'clearly and unmistakably' delegates to the arbitrator the question of arbitrability and thus, the [contract's] arbitration clause, by referencing the AAA Commercial Rules, 'clearly and unmistakably' does the same."). *But see Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 777 & n.1 (10th Cir. 1998) (resolving issue of arbitrability despite inclusion of AAA Rules in arbitration clause).

[4] *See, e.g., Oracle America Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (holding that incorporation of the United Nations Commission on International Trade Law Arbitration Rules met the "clear and unmistakable" standard); *Apollo Computer Inc.*, 886 F.2d at 473 (holding that incorporation of the Rules of Arbitration of the International Chamber of Commerce met the "clear and unmistakable" standard).

[5] *Compare* LCIA Rule 23.1 ("The Arbitral Tribunal shall have the power to rule upon its own jurisdiction and authority, including any objection to the initial or continuing existence, validity, effectiveness or scope of the Arbitration Agreement."), *with* AAA Commercial Rule 7 ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence or validity of the arbitration agreement or the arbitrability of any claim or counterclaim."), *and* UNCITRAL Arbitration Rules art. 21, para. 1, G.A. Res. 31/98, U.N. Doc. A/RES/31/98 (Dec. 15, 1976) ("The arbitral tribunal shall have the power to rule on objections

Because the LCIA Rules clearly and unmistakably allow the arbitrator to determine his own jurisdiction, and the parties clearly and unmistakably agreed to arbitration under the LCIA Rules, the Court finds that the parties have clearly and unmistakably committed the first step of the arbitrability analysis to the arbitrator.

Having found that the determination of arbitrability has been committed to the arbitrator, the Court need not decide whether the parties' dispute falls within their arbitration provision. That is a matter for the arbitrator to decide, in accordance with the LCIA Rules.

### 3. Dismissal without Prejudice

"[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) (emphasis added). With the issue of arbitrability referred to the arbitrator, nothing in Ethyl's claim remains for the Court to consider. Accordingly, the Court dismisses the claim without prejudice.

### IV. Conclusion

For the reasons set forth above, the Court GRANTS the defendant's motion to compel arbitration and DISMISSES the case without prejudice..

The Court will enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

Date: October 27, 2014
Richmond, Virginia

/s/ 
John A. Gibney, Jr.
United States District Judge

---

that it has no jurisdiction, including any objections with respect to the existence or validity of the arbitration clause or of the separate arbitration agreement.").